# ATKINSON & DeBARTOLO

**A PROFESSIONAL CORPORATION**
**ATTORNEYS AT LAW**

| | | |
|---|---|---|
| BUNCE D. ATKINSON<br>JOHN F. DEBARTOLO | MAILING ADDRESS:<br>P.O. BOX 8415<br>RED BANK, NJ 07701-8415<br>732-530-5300<br>TELEFAX 732-530-9877 | OFFICE LOCATION:<br>THE GALLERIA<br>2 BRIDGE AVENUE<br>BLDG. 2, 3RD FL., STE. 231<br>RED BANK, NJ |

March 12, 2020

Honorable Christine M. Gravelle, U.S.B.J.
United Bankruptcy Court
402 East State Street
Trenton, NJ 08608

          Re:    **LAURENCE A. HECKER**
                  Case No.: 10-24143/CMG

Dear Judge Gravelle:

Please accept the following as a Letter Brief in opposition to the Notice of Motion filed by Steven D'Agostino (hereinafter "D'Agostino") seeking an order to reopen the bankruptcy case of Laurence A. Hecker (hereinafter "Hecker"), Case No. 10-24143/CMG solely for the purpose of obtaining an order from this Court authorizing D'Agostino to proceed with, or file, an Amended Complaint in the Superior Court of New Jersey against Bunce D. Atkinson, Esq. (hereinafter "Atkinson" or the "Trustee"), in connection with the 2010 Chapter 7 bankruptcy of Hecker.

## STATEMENT OF FACTS

Prior to filing his motion seeking the Bankruptcy Court's approval to file a complaint against the Trustee in the Superior Court, D'Agostino filed an Amended Complaint in the Superior Court of New Jersey entitled *Steven D'Agostino v. Karen Bezner, Esq. and Bunce Atkinson, Esq.*, Superior Court of New Jersey, Law Division, Civil Part, Ocean County, Docket No. OCN-L-2326-19. The Amended Complaint

naming the Trustee as a defendant is dated October 25, 2019. The Amended Complaint was hand delivered to the law office of Atkinson & DeBartolo, P.C. by D'Agostino on January 16, 2020. Service was not made upon the Trustee, but rather was handed to the Trustee's secretary who was not authorized to accept service. The summons is dated October 21, 2019 prior to the date of the Amended Complaint. The Summons was issued by the Superior Court Clerk on October 21, 2019, prior to the Trustee being named as a defendant.

Following the delivery of the Amended Complaint to the Trustee's office on January 16, 2020, Maxwell L. Billek, Esq., of the Law Firm of Wilson, Elser, Moskowitz, Edelman & Dicker, filed a Notice of Motion on behalf of the Trustee in the Superior Court of New Jersey to dismiss the complaint for lack of subject matter jurisdiction because D'Agostino failed to obtain approval of the United States Bankruptcy Court prior to filing a complaint in the Superior Court against the former Trustee. Prior to the filing of the motion to dismiss, D'Agostino entered default against the Trustee even though he had never been properly served. D'Agostino filed opposition to the Notice of Motion to Dismiss, asserting that the Trustee was in default and that D'Agostino was not required to obtain an Order from the Bankruptcy Court authorizing him to file a complaint against the Trustee. Because D'Agostino did not first seek Bankruptcy Court Approval to file a complaint against the Trustee in the Superior Court of New Jersey based upon Hecker's 2010 Bankruptcy case and the entry of default, the Trustee has, and is incurring unnecessary legal expenses and costs in order to vacate the default, and to dismiss the Superior Court case for lack of subject matter jurisdiction.

The Amended Complaint against Atkinson in the Superior Court of New Jersey asserts in Count 1 that the Trustee had a fiduciary duty to D'Agostino, a judgment creditor, of the Debtor, Hecker, and that the Trustee breached that fiduciary duty. Count 2 alleges negligence because the Trustee did not provide D'Agostino with a copy of a Notice of Motion filed by Karen Bezner, Esq. to reopen the Chapter 7 case, and Count 3 alleges that the Trustee tortiously interfered with D'Agostino's prospective economic advantage by failing to inform D'Agostino of the Hecker Bankruptcy. D'Agostino alleges that the Trustee "effectively interfered with my ability to collect anything from Hecker (i.e. aside from the few *de minimis* items that I obtained from his house after his death)."

The Debtor filed a petition under Chapter 7 of the United States Bankruptcy Code on May 7, 2010. On the same date, the Bankruptcy Court Clerk, hereinafter the "Clerk" in accordance with its duties filed a Notice of Missing Schedules. Atkinson was appointed as the Trustee on May 10, 2010 and the First Meeting of Creditors was scheduled for June 23, 2010. The Debtor filed a motion to extend time to file the missing Schedules, which order was granted by the Court on May 24, 2010. Thereafter, on June 4, 2010, the Debtor filed some of the amended schedules required by the Court. The docket reveals that not all of the missing portions of the petition were filed by the Debtor. The First Meeting of Creditors was adjourned to July 28, 2010. However, prior to the First Meeting of Creditors, the Court dismissed the case based upon the Debtor's failure to file the Statement of Financial Affairs, Notice to Individual Consumer Debtors under §343(b), and Statement of Current Income and Means Test. The Order dismissing the case was entered on July 26, 2010. As a result of the Court's dismissal of the case, Atkinson was no longer the Trustee.

On September 1, 2020, according to the docket, Karen Bezner, Esq., filed a Notice of Motion to reopen the case to file missing documents and continue the case. The motion was filed on September 1, 2010.  At the time of the filing of the motion, Atkinson was not the Trustee because the case had been closed on July 26, 2010.  The Court entered an Order granting the Debtor's motion to reopen the case on September 20, 2010.  Following the reopening of the case, Atkinson was appointed as the Trustee on September 21, 2010.  The First Meeting of Creditors was scheduled by the Clerk for October 25, 2010.  The Trustee has no independent recollection of the First Meeting of Creditors that took place in 2010.  Additionally, he has no file to review for this no asset Chapter 7 case because files for no asset cases can be destroyed two years following the date of the discharge of the Trustee from his or her duties.  The Trustee was discharged from his duties upon the filing of his NDR on February 8, 2011.  Additionally, Atkinson inquired of the Office of the United States Trustee whether there is a tape or disk of the First Meeting of Creditors.  The Office of the United States Trustee does not have a tape or disk of the 2010 First Meeting of Creditors because the Office of the United States Trustee does not retain copies of First Meeting of Creditors longer than two years. Following the First Meeting of Creditors, the Trustee filed a Notice of Information for Abandonment of Property for the Debtor's real property located at 109 Division Street, Toms River, New Jersey.  The Notice of Abandonment was filed on December 22, 2010. According to the Debtor's petition, the real property was valued at $150,000.00. The real property was encumbered by a first mortgage with a balance due of $103,000.00 by America's Servicing, and there were judgment liens of Steven Bess in the sum of $705,641.95, Steven D'Agostino in the sum of $385,399.32, Summit Bank for $8,800.00

and M. Reichman and A. Lazaroff for the sum of $9,566.37. Additionally, Schedule E listed a debt owed to the Internal Revenue Service for $54,527.48.

The Bankruptcy Clerk filed a Certification of No Objection to the abandonment on January 13, 2011. As a result, the real property was no longer property of the Debtor Estate. D'Agostino's judgment lien remained a lien on Hecker's property following the Trustee's abandonment on January 13, 2011. According to the docket, the Debtor obtained a discharge on January 7, 2011. Although the debt was discharged, the D'Agostino lien on the Debtor's real property remained. Nothing precluded D'Agostino from seeking to enforce his judgment lien. Following the abandonment of the real property, Atkinson filed a Chapter 7 Trustee Report of No Distribution on February 8, 2011. As a result, the Trustee was discharged from his duties. Thereafter, the Court closed the case and entered its Final Decree on March 16, 2011. The Hecker case was an individual Chapter 7, no asset case, and the Trustee never took possession of any of the Debtor's property, and did not operate the Debtor's business.

### I.  D'AGOSTINO'S MOTION SHOULD BE DENIED BECAUSE ATKINSON IS ENTITLED TO QUALIFIED IMMUNITY

In *Pearson v. Callahan* citing *Harlow v. Fitzgerald*, 457 *U.S*. 800 (1982), the Court confirmed that the Doctrine of Qualified Immunity protects government officials from liability for civil damages insofar as their conduct does not violate the established statutory or constitutional rights of which a reasonable person would have known. The Court stated:

> The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct.

2727, 73 L.Ed.2d 396 (1982). Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Groh v. Ramirez,* 540 U.S. 551, 567, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004) (KENNEDY, J., dissenting) (quoting *Butz v. Economou,* 438 U.S. 478, 507, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), for the proposition qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law").
*Id.* at p. 231.

The Court Continued:

Because qualified immunity is "an immunity from suit rather than a mere defense to liability ... it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (emphasis deleted). Indeed, we have made clear that the "driving force" behind creation of the qualified immunity doctrine was a desire to ensure that " 'insubstantial claims' against government officials [will] be resolved prior to discovery."

*Anderson v. Creighton,* 483 U.S. 635, 640, n. 2, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Accordingly, "we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) *(per curiam).*

In *Saucier,* 533 U.S. 194, 121 S.Ct. 2151, this Court mandated a two-step sequence for resolving government officials' qualified immunity claims. First, a court must decide whether the facts that a plaintiff has alleged (see Fed. Rules Civ. Proc. 12(b)(6), (c)) or shown (see Rules 50, 56) make out a violation of a constitutional right. 533 U.S., at 201, 121 S.Ct. 2151. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. *Ibid.* Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right. *Anderson, supra,* at 640, 107 S.Ct. 3034.

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity balances two important

interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Groh v. Ramirez,* 540 U.S. 551, 567, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004) (KENNEDY, J., dissenting) (quoting *Butz v. Economou,* 438 U.S. 478, 507, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), for the proposition qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law").

Because qualified immunity is "an immunity from suit rather than a mere defense to liability ... it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (emphasis deleted). Indeed, we have made clear that the "driving force" behind creation of the qualified immunity doctrine was a desire to ensure that " 'insubstantial claims' against government officials [will] be resolved prior to discovery."
*Id*. at p. 231-232.

In *J & S Properties, LLC*, Debtor, *Phoenician Mediterranean Villa, LLC v. Swope*, 72 F.3d, 1938 (3rd Cir. 2017), one of the issues on appeal was whether the Chapter 7 Bankruptcy Trustee Swope was immune from suit and entitled to qualified immunity. The Court stated:

It appears clear that Chapter 7 Bankruptcy Trustees like Swope are government officials for purposes of *Harlow*. Phoenician does not dispute the finding of the lower courts that Swope is a public official generally entitled to qualified immunity. In fact, Phoenician claims that because "the Chapter 7 Trustee is appointed and supervised by the United States Trustee [and] is an officer of the appointing Court, ... it is appropriate to apply Fourth Amendment limits on government power" to Swope. Phoenician Br. 22. Regardless of the Fourth Amendment analysis, Swope *is* a government official for purposes of immunity. The Chapter 7 Trustee is created by Congress, appointed by and "operating under the aegis of the U.S. Trustee," and entrusted with the "statutory duties ... to gather and liquidate the property of the estate, to be accountable for the estate, ensure that the debtor performs his or her obligations," and "perform[ ] [other] adjudicatory and administrative functions." *In re Castillo* , 297 F.3d 940, 950–51 (9th Cir. 2002).

> We thus hold that bankruptcy trustees are government officials, entitled under *Harlow* to qualified immunity from § 1983 claims by third parties when they act in their official capacity in a manner that is not contrary to clearly established law. *See* 457 U.S. at 818 & n.30, 102 S.Ct. 2727.
> *Id*. at p. 843

The Court continued:

> Qualified immunity, "properly applied, ... protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011) (citation omitted). "To overcome qualified immunity, a plaintiff must plead facts 'showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.' " *Mammaro v. N.J. Div. of Child Prot. & Permanency*, 814 F.3d 164, 168–69 (3d Cir. 2016), *cert. denied*, ––– U.S. ––––, 137 S.Ct. 161, 196 L.Ed.2d 121 (2016) (quoting *al–Kidd*, 563 U.S. at 735, 131 S.Ct. 2074 ). And an official's conduct violates clearly established law if "there [is] sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put defendant on notice that ... her conduct is constitutionally prohibited." *McLaughlin v. Watson*, 271 F.3d 566, 572 (3d Cir. 2001). Such precedent must come either from the Supreme Court or a " 'robust consensus of cases of persuasive authority' in the Court of Appeals." *Mammaro*, 814 F.3d at 169 (quoting *Taylor v. Barkes*, –––U.S. ––––, 135 S.Ct. 2042 2044, 192 L.Ed.2d 78 (2015) (per curiam)).
> *Id*. at p.843

Clearly Atkinson is entitled as a Chapter 7 Trustee to qualified immunity, and is immune from suit unless he violated a constitutional right or statutory right, and the right was clearly established at the time of the challenged conduct. Nothing in the Amended Complaint filed by D'Agostino asserts that Atkinson violated any constitutional right of D'Agostino. Moreover, there are no statutory rights of D'Agostino that Atkinson violated. Accordingly, the relief sought by D'Agostino should be denied, and an order should be entered denying D'Agostino the right to proceed with any lawsuit against Atkinson in the Superior Court of New Jersey.

## II. D'AGOSTINO SHOULD BE DENIED RELIEF TO FILE A COMPLAINT BASED UPON THE BARTON DOCTRINE

In *In Re Vista Care Group, LLC v. Schwab,* 678 *F*.3d 218 (3rd Cir. 2012), one of the issues was whether a party must obtain leave from the Bankruptcy Court before bringing an action against a Trustee in another forum. The Third Circuit determined that a party is required to obtain an order from the Bankruptcy Court before bringing an action against a Trustee in another forum. The Court stated:

> The first question presented by this case is whether a party must first obtain leave of the bankruptcy court before it brings an action in another forum against a bankruptcy trustee for acts done in the trustee's official capacity. We now join our sister circuits in holding that, under the doctrine established in *Barton v. Barbour,* leave of the bankruptcy court is required before instituting such an action. *See, e.g., Lawrence v. Goldberg,* 573 F.3d 1265, 1269 (11th Cir.2009) (holding that the *Barton* doctrine is applicable to bankruptcy trustees); *In re Crown Vantage, Inc.,* 421 F.3d 963, 970 (9th Cir.2005) (same); *Muratore v. Darr,* 375 F.3d 140, 143 (1st Cir.2004) (same); *In re Linton,* 136 F.3d at 545–46 (same); *In re Lehal Realty Assocs.,* 101 F.3d 272, 276 (2d Cir.1996) (same); *In re DeLorean Motor Co.,* 991 F.2d 1236, 1240 (6th Cir.1993) (same); *Anderson v. United States,* 520 F.2d 1027, 1029 (5th Cir.1975) (same).[2]

> Established by the Supreme Court over a century ago, the *Barton* doctrine provides that "before suit is brought against a receiver[,] leave of the court by which he was appointed must be obtained." 104 U.S. at 128 (citing *Davis v. Gray,* 83 U.S. 203, 16 Wall. 203, 21 L.Ed. 447 (1872)). At p 224
> *Id*. at p. XXX

Not only must a party seeking to sue a Trustee first obtain an order from the United States Bankruptcy Court for authorization, but the party must also make a *prima facie* case against the Trustee showing that the claim is not without foundation. In *Vista Group* the Court stated:

> A party seeking leave of court to sue a trustee "must make a prima facie case against the trustee, showing that its claim is not without foundation."

> *In re Nat'l Molding Co.,* 230 F.2d at 71 (citations omitted). Although, as CGL observed at oral argument, the "not without foundation" standard is similar to the standard courts employ when evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), we emphasize that the former involves a greater degree of flexibility. *Compare Barefoot Architect, Inc. v. Bunge,* 632 F.3d 822, 826 (3d Cir.2011) ("To withstand a Rule 12(b)(6) motion to dismiss, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.' ") (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937 1949, 173 L.Ed.2d 868 (2009)), *with In re Nat'l Molding Co.,* 230 F.2d at 71.
> *Id*. at p.232-233.

Even if D'Agostino could overcome the Trustee's qualified immunity, he does not make a *prima facie* case against the Trustee showing that there is valid foundation for his claim. The Complaint against the Trustee arises out of alleged actions in the fall of 2010, and until February 8, 2011 when the Trustee was discharged. According to D'Agostino's Amended Complaint, he was aware of Hecker's bankruptcy in the summer of 2010, was aware that it was dismissed on July 20, 2010 (see paragraph 10 of Amended Complaint). D'Agostino does not indicate that he took any actions to attempt to collect or enforce the judgement he had obtained during the years 2010, 2011 or 2012. In paragraph 11 of the Amended Complaint and paragraph 21 of his certification, D'Agostino claims that he became aware of the bankruptcy in September 2013 when he went to Hecker's home and Hecker advised him of the bankruptcy. According to D'Agostino's certification, he had contacted Peter Regan, Sr., a debt collection attorney in the summer of 2013. *N.J.S.A.*14A-1 provides a six (6) year statute of limitations to institute an action for malpractice, negligence, breach of fiduciary duty, or tortious interference with prospective economic advantage, *Vastano v. Algeir*, 178 *N.J.* 230, 236, 203) provides that a legal malpractice action is required to be commenced within six (6) years of the a accrual of the cause of action. In the instant matter, any accrual of a cause of action

occurred in 2010. The only negligence complained of in Count 2 of D'Agostino's complaint is that Atkinson failed to send him a copy of the motion filed by Bezner in September 2010, which was prior to Atkinson's appointment as the Trustee. Clearly there is no foundation for a claim of negligence. New Jersey Courts have determined that a cause of action for tortious interference with prospective economic advantage must be brought within six (6) years of the accrual of the cause of action. See *A.C. Capital Management, LLC* 450 *N.J. Super* 1, (67, App. Div. 2017). Regarding tortious interference with prospective economic advantage, nothing in the Amended Complaint sets forth any action taken by Atkinson to interfere with any protectable right, a prospective economic or contractual relationship between Hecker and D'Agostino. In *Printing Mart-Morristown v. Sharp Electronics Corp.*, 116 *N.J.* 739, the New Jersey Supreme Court stated:

> A complaint based on tortious interference must allege facts that show some protectable right--a prospective economic or contractual relationship. Although the right need not equate with that found in an enforceable contract, there must be allegations of fact giving rise to some "reasonable expectation of economic advantage." Harris v. Perl, supra, 41 N.J. at 462, 197 A.2d 359. A complaint must demonstrate that a plaintiff was in "pursuit" of business. Second, the complaint must allege facts claiming that the interference was done intentionally and with "malice." Louis Kamm, Inc. v. Flink, supra, 113 N.J.L. at 588, 175 A. 62; Kopp, Inc. v. United Technologies, Inc., 223 N.J.Super. 548, 559, 539 A.2d 309 (App.Div.1988); Levin v. Kuhn Loeb & Co., 174 N.J.Super. 560, 573, 417 A.2d 79 (App.Div.1980) (applies New York law). For purposes of this tort, "[t]he term malice is not used in the literal sense requiring ill will toward the plaintiff." Restatement (Second) of Torts Chapter 37 at 5 (introductory note) (1979). Rather, malice is defined to mean that the harm was inflicted intentionally and without justification or excuse. Rainier's Dairies v. Raritan Valley Farms, Inc., 19 N.J. 552, 563, 117 A.2d 889 (1955). Third, the complaint must allege facts leading to the conclusion that the interference caused the loss of the prospective gain. A plaintiff must show that "if there had been no interference, there was a reasonable probability that the victim of the interference would have received the anticipated economic benefits." Leslie Blau Co. v. Alfieri,

    157 N.J.Super. 173, 185-86, 384 A.2d 859 (App.Div.), certif. denied sub nom. Leslie Blau Co.
v. Reitman, 77 N.J. 510, 391 A.2d 523 (1978).  Fourth, the complaint must allege that the injury caused damage. Norwood Easthill Assocs. v. Norwood Easthill Watch, 222 N.J.Super. 378, 384, 536 A.2d 1317 (App.Div.1988).

There are no facts in the Amended Complaint which allege that in the pursuit of D'Agostino's dealings with the Debtor Hecker that Atkinson interfered with him.  There are no allegations that Atkinson interfered with any relationship between Hecker and D'Agostino intentionally and with malice.

    Even if D'Agostino could overcome the qualified immunity of the Trustee, the provisions of the Barton Doctrine and the requirement in *Vista Group* that a party must make a *prime facie* against the Trustee showing that the claim is not without foundation, requires that D'Agostino's motion to maintain a lawsuit against the Trustee for actions taken in 2010 in the Hecker bankruptcy must be denied.

                                              Respectfully submitted,

                                              */s/ Bunce D. Atkinson*

BDA/jkd                                       BUNCE D. ATKINSON, ESQ.

cc: Steven D'Agostino