UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
**(609) 989-2182**

CHAMBERS OF
FREDA L. WOLFSON
CHIEF JUDGE

Clarkson S. Fisher Federal Building
& U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

## LETTER ORDER

March 24, 2021

Steven D'Agostino, *pro se*
25 Nautilus Drive
Barnegat, New Jersey 08005

Bunce D. Atkinson, Esq.
The Kelly Firm, P.C.
1011 Highway 71
Spring Lake, New Jersey 07762

   RE:  *Steven D'Agostino v. Bunce D. Atkinson, Esq.*
       Civ. No. 20-06330 (FLW)

Dear Litigants:

  Appellant, Steven D'Agostino ("Appellant" or "D'Agostino"), appeals from an Order and Statement of Reasons, dated April 3, 2020, of the United States Bankruptcy Court for the District of New Jersey ("Bankruptcy Court"), which denied D'Agostino's Motion for Leave to pursue claims against Trustee, Bunce D. Atkinson, Esq. ("Atkinson"), in the New Jersey Superior Court, based on a finding of qualified immunity. For the foregoing reasons, the Court **AFFIRMS** the Bankruptcy Court's Order denying D'Agostino's Motion for Leave.

**I.**  **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

   A.  Underlying Hecker Bankruptcy Case

  On May 7, 2010, Laurence A. Hecker ("Hecker"), an attorney, filed a *pro se* petition for relief under Chapter 7 of the United States Bankruptcy Code ("Hecker Bankruptcy Case"). (Bankruptcy ECF No. 1.) D'Agostino, a former client of Hecker, obtained a legal malpractice

judgment against Hecker in May 2009 for $385,399.32; however, D'Agostino was not originally listed as a creditor in Hecker's petition. That same day, the Bankruptcy Court Clerk ("Clerk") also filed a Notice of Missing Schedules. (Bankruptcy ECF No. 1.)

On May 10, 2010, Atkinson was appointed as the bankruptcy Trustee, and on June 4, 2010, Hecker filed amended schedules, which listed D'Agostino as having a secured claim in the amount of the legal malpractice judgment. (Bankruptcy ECF Nos. 3 and 10.) Hecker, however, did not file an amended creditor matrix, and therefore, D'Agostino's name was not included on the creditor list for notices sent by the Bankruptcy Court Clerk's Office. Notwithstanding that error, D'Agostino received certain notices from Hecker's bankruptcy proceedings, as evidenced by the fact that D'Agostino contacted the Bankruptcy Court in July 2010, regarding Hecker's petition. According to D'Agostino, an employee of the Clerk's Office informed him that the case was set to be dismissed due to various issues.

Indeed, on July 20, 2010, prior to the first meeting of creditors, Hecker's case was dismissed for failure to file missing documents, and a final decree was entered on July 26, 2010. (Bankruptcy ECF Nos. 13 and 16.) A Clerk's Office employee sent D'Agostino a copy of the order of dismissal, but D'Agostino did not receive independent notice of the dismissal.

On September 1, 2010, Hecker, this time through bankruptcy counsel, filed a motion to reopen the case. (Bankruptcy ECF No. 17.) The motion was served only upon the office of the United States Trustee, Atkinson, and counsel for an automotive creditor. At the time the motion to reopen the case was filed, Atkinson was not the Trustee because the case had been closed in July 2010. The Bankruptcy Court granted Hecker's motion, and the case was reinstated on September 20, 2010. (Bankruptcy ECF No. 18.) At that time, Atkinson was reappointed as

Trustee, but there is no evidence that D'Agostino was notified of the reinstatement, because Hecker had not amended his previous creditor matrix.

On October 25, 2010, Atkinson conducted a meeting pursuant to 11 U.S.C. § 341, and on December 22, 2010, Atkinson filed a notice of abandonment for Hecker's real property located at 109 Division Street, Toms River, New Jersey ("Property"). According to Hecker's petition, the Property was valued at $150,000, and it was encumbered by a first mortgage with a balance of $103,000, along with judgment liens held by Steven Bess for $705,641.95, D'Agostino for $385,399.32, Summit Bank for $8,800, and M. Reichman and A. Lazaroff for the sum of $9,566.37. Shortly thereafter, on January 7, 2011, Hecker received his Chapter 7 discharge, and on February 8, 2011, Atkinson issued a report of no distribution. (Bankruptcy ECF No. 32.) Accordingly, Hecker's bankruptcy case was closed on March 16, 2011. (Bankruptcy ECF No. 35.)

According to D'Agostino, he had no knowledge of the reinstatement of the bankruptcy proceeding, nor the case's closure in March 2011, until a September 2013 conversation with Hecker. D'Agostino further informed the Bankruptcy Court in his motion for leave that he spoke with a collection attorney in 2013, who then informed D'Agostino that his judgment was still active on the New Jersey Judiciary website. D'Agostino certifies that he next took steps to collect on the judgment in 2017, after learning of Hecker's death. D'Agostino again contacted an attorney to collect against certain real property, however, the bank had foreclosed on the property in October 2017.

Thereafter, D'Agostino claims that he obtained files belonging to Hecker which he believes reveals that Hecker hid assets. On October 21, 2019, based on the newly acquired files, D'Agostino filed suit against Atkinson and Hecker's personal bankruptcy attorney, Karen Bezner,

3

Esq., in the Superior Court of New Jersey, captioned *Steven D'Agostino v. Karen Bezner, Esq. and Bunce Atkinson, Esq.*, Superior Court of New Jersey, Law Division, Civil Part, Ocean County, Docket No. OCN-L-2326-19 ("Superior Court Action"). As to Atkinson, the Superior Court Action seeks damages for breach of fiduciary duty, professional negligence, tortious interference, as well as declaratory relief. Specifically, D'Agostino claims that Atkinson failed in his duties as a Trustee by not noticing D'Agostino of various bankruptcy proceedings.

In response to the Superior Court Action, Atkinson filed a motion to dismiss for lack of subject matter jurisdiction based on D'Agostino's failure to obtain approval of the Bankruptcy Court prior to the filing of his state court Complaint. *See Barton v. Barbour*, 104 U.S. 126, 128 (1881) (holding that "before suit is brought against a receiver, leave of the court by which he was appointed must be obtained); *see also In re Vista Care Group v. Schwab*, 678 F.3d 218, 224 (3rd Cir. 2012) (holding that a party is required to obtained an order from the Bankruptcy Court before bringing an action against a Trustee in another forum). It appears that Atkinson's motion was withdrawn following the Bankruptcy Court's Order denying D'Agostino's request for leave, and that D'Agostino voluntary dismissed his claims against Atkinson in the Superior Court Action without prejudice.

      B.      <u>D'Agostino's Motion for Leave and the Bankruptcy Court's Decision</u>

On March 3, 2020, D'Agostino filed a Motion to Reopen the Hecker Bankruptcy Case, and requested leave to pursue his clams against Atkinson in the Superior Court Action. (Bankruptcy ECF No. 37.)

On April 3, 2020, following oral argument, the Bankruptcy Court granted D'Agostino's Motion to Reopen the Hecker Bankruptcy Case, but it denied D'Agostino's request for leave to pursue the Superior Court Action. (*See, e.g.*, Bankruptcy ECF No. 74 ("Motion for Leave

4

Transcript") at 17:4-6; Bankruptcy ECF No. 48.)  In denying D'Agostino's request, the Bankruptcy Court found that "D'Agostino's position highlights the need for qualified immunity for Chapter 7 Trustees," pursuant to *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) and *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  (*See* Bankruptcy ECF No. 48 at 7.)  In that regard, the Bankruptcy Court found that not only were Atkinson's actions as Trustee reasonable, but D'Agostino failed to articulate any statutory or constitutional rights which Atkinson purportedly violated.  (*Id.* at 7.)  Rather, according to the Bankruptcy Court, D'Agostino's Motion for Leave only cited the Fourteenth Amendment for the proposition that Atkinson denied him his due process rights to be heard during Hecker's bankruptcy proceedings.  (*Id.*)  However, the Bankruptcy Court found that although D'Agostino claimed that Atkinson failed to give him notice of the petition, that was not Atkinson's duty.  (*Id.*)  The failures of sending various notice were on the part of Hecker, not Atkinson.  (*Id.* at 8.)  Moreover, the Bankruptcy Court found that Atkinson acted in accordance with the requirements of the Bankruptcy Code when he investigated Hecker's assets.  (*Id.*)  The court determined that Atkinson correctly abandoned Hecker's real property based on his analysis that its sale would not produce anything for the estate.  (*Id.*)  The value of the property was insufficient to produce a return to the estate after payment of the costs of sale and payment of the debtor's exemption.  (*Id.*)  Finally, the court noted that Atkinson's abandonment of Hecker's real property did not affect D'Agostino's judgment lien.  (*Id.*)

        C.      <u>Motion for Reconsideration and D'Agostino's Instant Appeal</u>

On April 8, 2020, D'Agostino filed a Motion for Reconsideration of the Bankruptcy Court's Order denying leave to pursue claims against Atkinson in the Superior Court Act, and on May 5, 2020, the Bankruptcy Court denied D'Agostino's Motion for Reconsideration. (Bankruptcy ECF Nos. 53 and 57.)

On May 18, 2020, D'Agostino filed the instant Notice of Appeal.

## II. LEGAL STANDARD

This Court has jurisdiction under 28 U.S.C. § 158(a). "[T]he nature of the issues presented on appeal" determines the "proper standard of review." *In re Beers*, No. 09-1666, 2009 WL 4282270, at *3 (D.N.J. Nov. 30, 2009). I review factual findings for clear error, *Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999), exercise of discretion for abuse thereof, *In re United Healthcare Sys., Inc.*, 396 F.3d 247, 249 (3d Cir. 2005), and conclusions of law *de novo*. *Mellon Bank, N.A. v. Metro Common's, Inc.*, 945 F.2d 635, 642 (3d Cir. 1991).

## III. DISCUSSION

On this appeal, D'Agostino argues that the Bankruptcy Court erred by finding that Atkinson is entitled to qualified immunity under *Harlow* and *Pearson*, because Atkinson's purported failures violated the United States Department of Justice's Handbook for Chapter 7 Trustees ("Trustee Handbook") and other statutory obligations, which defeat Atkinson's entitlement to qualified immunity. (*Id.*) D'Agostino argues that pursuant to 11 U.S.C. § 704, a trustee must, among other things, "investigate the financial affairs of the debtor" and "review all materials filed by the debtor and[…] file with the court a statement as to whether the debtor's case would be presumed to be an abuse under section 707(b)." (*Id.* at 12-13.) According to D'Agostino, however, the fact that Hecker's creditor matrix only showed two creditors, while Hecker's amended schedules demonstrated a total of approximately nineteen creditors, evinces that Atkinson failed in his duties as Trustee. (*Id.* at 12-13.) According to D'Agostino, "if Atkinson had taken even just a quick glance at Hecker's paperwork, this obvious defect would have been caught." (*Id.*) D'Agostino further claims that in 2010, the Trustee Handbook required Atkinson

to verify the accuracy of the creditor matrix, and by failing in that regard, he is not entitled to qualified immunity. (*Id.* at 8-9.)

In response, Atkinson argues that the Bankruptcy Court correctly determined that D'Agostino is not permitted to pursue his claims in the Superior Court Action, because Atkinson, acting as Trustee in the Hecker Bankruptcy Case, acted reasonably, and is entitled to qualified immunity. (Appellee Opp. Br., 14-23.)

A party seeking leave of court to sue a trustee "must make a prima facie case against the trustee, showing that its claim is not without foundation." *In re Nat'l Molding Co.*, 230 F.2d at 71 (citations omitted). As explained in *In re VistaCare Grp., LLC*, 678 F.3d 218, 232-33 (3d Cir. 2012), "[a]lthough […] the 'not without foundation' standard is similar to the standard courts employ when evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the former standard involves a greater degree of flexibility." *Compare Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 826 (3d Cir. 2011) ("To withstand a Rule 12(b)(6) motion to dismiss, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)), *with In re Nat'l Molding Co.*, 230 F.2d at 71. Reviewing courts, like this one, must "accord significant deference to the determinations of the bankruptcy court, which, given its familiarity with the underlying facts and the parties, is uniquely situated to determine whether a claim against the trustee has merit." *In re VistaCare Grp., LLC*, at 232-33. The bankruptcy court is also uniquely situated to determine the potential effect of a judgment against the trustee on the debtor's estate. *Id.* As the Ninth Circuit Bankruptcy Appellate Panel noted in *In re Kashani*, the decision whether to grant leave to sue a trustee may involve a "balancing of the interests of all parties involved" and consideration of whether another tribunal may have expertise regarding the issues in the proposed suit. 190 B.R. at 886, 887 (citation

7

omitted). Accordingly, reviewing courts should "not second-guess the bankruptcy court's judgment unless it is clear from the record that the proposed suit is wholly lacking in factual or legal support." *In re VistaCare Grp., LLC*, 678 F.3d at 233 (citing *Anderson v. United States*, 520 F.2d 1027, 1029 (5th Cir. 1975).

Here, I agree with the Bankruptcy Court's determination, that in the context of qualified immunity, D'Agostino did not meet his burden of establishing that his claims against the Atkinson were "not without foundation." In the State Court Action's Amended Complaint, D'Agostino asserts that Atkinson acted negligently, breached a fiduciary duty, and tortiously interfered with D'Agostino's prospective economic advantage. In that regard, each claim asserted by D'Agostino against Atkinson in the State Court Action is premised on Atkinson's failure to inform D'Agostino of various events in the Hecker Bankruptcy Case, including Atkinson's purported failure to inform D'Agostino of the petition filed by Hecker, failure to include D'Agostino on the creditor notice matrix, and failure to provide him with a "proof of claim." Notably, the Amended Complaint does not contain any claims against Atkinson related to conduct other than his alleged failure to notice and inform D'Agostino.

As the Bankruptcy Court correctly found, however, Atkinson, as Trustee, was under no statutory duty or obligation to notice D'Agostino, as a creditor. Pursuant to Bankruptcy Rule 2002(a)(1), the Clerk, not the Trustee, provides notice to creditors of the filing of a petition and the date for the first meeting of creditors, and this notice is generated using the debtor's creditor matrix.[1] Therefore, as the Bankruptcy Court explained, "It was Hecker who failed to update his

---

[1] Notably, 11 U.S.C. § 521(a)(1) provides that <u>the debtor</u> is required to prepare and file the list of creditors, the list of assets and liabilities, the statement of financial affairs, and the statement of income and expenses. If a debtor does not file the information required, then the court may dismiss the case, <u>but only on motion of the United States trustee</u>. *See* 11 U.S.C. § 707(a)(3)

8

creditor matrix when adding D'Agostino as a creditor. It was Hecker who failed to notice D'Agostino of the motion to reinstate the case. The failure of service gave D'Agostino potential avenues to pursue Hecker." (Bankruptcy ECF No. 48 at 8.) In that regard, D'Agostino acknowledges on this appeal that he was aware of the Hecker Bankruptcy Case in or around June 2010, knew of the case's dismissal in July 2010, and later learned, <u>from a conversation with Hecker in 2013</u>, that the case had been reinstated and Hecker had received his Chapter 7 discharge. D'Agostino further acknowledges that he was in contact with an attorney shortly thereafter, who advised him that he might still have certain rights. Despite this knowledge, however, D'Agostino did not act until four years later, after Hecker's death.

Indeed, when analyzing Atkinson's conduct considering his statutory duties as Trustee, the record reveals that he acted reasonably. In accordance with 11 U.S.C. § 704(a), a trustee is charged with twelve specifically enumerated duties, none of which include noticing creditors. Specifically, § 704(a) includes "collect[ing] and reduc[ing] to money the property of the estate for which such trustee serves, and clos[ing] such estate as expeditiously as is compatible with the best interests of parties in interest; being accountable for all property received; and investigating the financial affairs of the debtor."

Here, because Hecker's bankruptcy petition was filed approximately ten years ago, Atkinson does not possess physical records related to the case and lacks recollection of the specific events surrounding D'Agostino's claims. (*See* Certification of Bunce A. Atkinson, Esq. in Opposition to Motion to Proceed with Claims Against Trustee, dated March 12, 2020 ("Atkinson Cert.") at ¶ 15.) However, Atkinson explained to the Bankruptcy Court his general approach when

---

(emphasis added). Atkinson, here, was appointed as a bankruptcy trustee, not the United States trustee.

serving as Trustee. Specifically, Atkinson certified that at every First Meeting of Creditors, he requires the debtor to provide proof of identification and proof of his or her Social Security Number. (*Id.* at ¶ 17.) After the debtor's identity is established, Atkinson explained that he asks every debtor to identify and verify the signature on the debtor's petition. (*Id.*) Thereafter, he asks the debtor if the information contained in the petition is true, and whether there are any additions, deletions, corrections, or omissions. (*Id.*) If the debtor states that there are additions, deletions, corrections or omissions, Atkinson then requires the debtor to file an amended schedule. (*Id.*) Based upon the Hecker's bankruptcy docket, no amended schedules were filed subsequent to the First Meeting of Creditors. Once the debtor has identified his or her petition, Atkinson then asks the debtor a series of questions concerning the assets listed in the petition, including whether anyone is holding real or personal property in trust for the debtor and whether the debtor has transferred anything of value to family members or friends with in the last four years. (*Id.* at ¶ 18.)

Atkinson correctly abandoned Hecker's real property based on his analysis that its sale would not benefit the estate. Indeed, the value of the property was insufficient to produce a return to the estate after payment of the costs of sale and payment of the debtor's exemption. It is also important to note that Atkinson's abandonment of Hecker's real property did not affect D'Agostino's judgment lien. The lien remained on the Property, which D'Agostino learned after the Hecker Bankruptcy Case closed. Accordingly, like the Bankruptcy Court, I agree that Atkinson's process and approach appears reasonable, and therefore, D'Agostino failed to meet his burden of showing that his claim was "not without foundation." *In re VistaCare Grp., LLC*, 678 F.3d at 232-33.

Finally, to the extent D'Agostino argues that Atkinson purportedly failed to comply with the Trustee Handbook, and that such failures prevent him from enjoying qualified immunity

protection, I find that argument unpersuasive. Initially, no evidence exists in the record to even suggest that the Trustee Handbook "require[d Atkinson] to check the accuracy of the notice matrix," as D'Agostino claims. Indeed, D'Agostino fails to cite any specific provision of the Trustee Handbook, and the Court's own independent review of the current version of the Trustee Handbook did not reveal any such express provision.[2] *See*, *e.g.*, U.S. Dep't. of Justice, Executive Office for U.S. Trustees, Handbook for Chapter 7 Trustees. Moreover, even assuming the Trustee Handbook did include such a provision, that finding, alone, would not alter the outcome. I agree with the Bankruptcy Court below that the Trustee Handbook contains only "guidelines," not statutory obligations or affirmative rules. (Motion for Leave Transcript at 18:5 to 20.)[3]

## IV.   CONCLUSION

Accordingly, based on the foregoing reasons, Appellant's appeal is **DENIED** and the Bankruptcy Court's Order and Statement of Reasons, dated April 3, 2020, is **AFFIRMED**.

**SO ORDERED.**

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson
U.S. Chief District Judge

---

[2]   Neither D'Agostino, nor Atkinson provided the Court with a copy of the Trustee Handbook in effect at the time of the Hecker Bankruptcy Case.

[3]   Even in the context of qualified immunity, I note that D'Agostino's reliance on *In Re: J & S Properties, LLC*, 872 F.3d 138 (3d Cir. 2017) is incorrect. Based upon his interpretation of the court's decision in that case, D'Agostino infers that a trustee who fails to comply with the Trustee Handbook acts unreasonably, and therefore, is not entitled to qualified immunity. (Appellant Moving Br., 15.) However, that position is unsupported by the case law. *See Mammaro*, 814 F.3d at 168–69 (requiring more than unreasonableness to overcome qualified immunity). In fact, the court in *In Re: J & S Properties, LLC* found that the trustee was entitled to qualified immunity based on her adherence to the statutory obligations set forth at 11 U.S.C. § 704(a), not her compliance with the Trustee Handbook. 872 F.3d at 144-45. Thus, although the court referenced certain provisions from the Trustee Handbook to further support its determination, the trustee's compliance with the statute controls the decision on qualified immunity. *Id.* at 144.